**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21-CR-30003-DWD** |
| | ) | |
| **WARREN GRIFFIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### Memorandum and Order

Pending before the Court is Defendant Warren Griffin's Motion to Suppress Physical Evidence and Statements ("Motion to Suppress"). (Doc. 465). The Government has responded in opposition (Doc. 543), and the Court held an evidentiary hearing on November 15, 2022. (Doc. 617).

The Court previously denied Griffin's motion in so far as it asked the Court to suppress all evidence obtained as a result of the execution of various warrants, finding that the warrants were valid. (Doc. 725). All that remains to be addressed is Griffin's claim that *Miranda v. Arizona*, 384 U.S. 436 (1966) requires suppression of statements he made to police during a traffic stop on August 9, 2018.[1]

For the reasons set forth below, the Motion to Suppress any statements Griffin may have made when he was arrested on August 9, 2018 is **DENIED**.

---

[1] Griffin also contends that any statements he made must be suppressed because the stop of his vehicle was effectuated by use of improperly issued warrants. But, as noted, the Court has already concluded that the disputed warrants were valid. Accordingly, all that is in issue here is Griffin's *Miranda* argument.

## I.   <u>Motion to Suppress</u>

Griffin's arguments regarding the alleged violation of his *Miranda* rights are set forth below in their entirety:

> Discovery also appears to indicate that law enforcement stopped the vehicle that Mr. Griffin was driving based on an unrelated known arrest warrant from the U.S. District Court for the Eastern District of Kentucky. Law enforcement knew prior to the stop that Mr. Griffin would be taken into custody. Nevertheless, discovery reflects that in effectuating the arrest law enforcement made inquiries of Mr. Griffin without benefit of Miranda. Discovery reflects that law enforcement detained and then question[ed] Mr. Griffin regarding the contents of his vehicle and person, including relative to a gun and that Mr. Griffin made inculpatory statements.

(Doc. 465, p. 2).

> Mr. Griffin's oral statements to police when he was detained pursuant to an arrest warrant were un-Mirandized and should be suppressed on that basis. *Miranda v. Arizona*, 384 U.S. 436 (1966).

(Doc. 465, p. 3).

### Factual Background[2]

Griffin was arrested on August 9, 2018 on an outstanding Federal Warrant with the Internal Revenue Service following a traffic stop in Hamel, Illinois. The traffic stop was effectuated through the use of a search warrant that was obtained authorizing location tracking of a phone associated with Griffin. Master Sergeant Nick Homann with the Illinois State Police, who was present during the arrest, testified as follows regarding the circumstances of Griffin's arrest:

---

[2] The Court held an evidentiary hearing on November 15, 2022. The Court's factual findings are based on testimony from Master Sergeant Nick Homann with the Illinois State Police, which the Court found to be credible.

A. The early morning hours of August 9th, 2018, I became aware that Mr. Griffin's cellphone was moving south from the Chicagoland area. I believed if he made it south of Joliet that there was a high likelihood that he was going to come to the East St. Louis area. At that time we decided to attempt to effect the arrest of Mr. Griffin on his way south. While watching his cellphone location, we were aware that he had two vehicles that he traveled in, a silver Lexus and a black GMC pickup truck. So we stationed agents along I-55 south of Springfield looking in particular for those vehicles and then I contacted a patrol trooper and asked if we were able to locate the vehicle if he would be able to conduct a traffic stop on the vehicle.

Q. Was a stop subsequently conducted?

A. Yes, sir.

Q. How did that stop unfold?

A. Traffic stop was in the town of Hamel just off of I-55 near mile post 30. Trooper made the traffic stop. As he's conducting his initial business at the vehicle, myself and another agent pulled up to assist. Mr. Griffin was asked to step from the vehicle. As he did he was told he was being placed under arrest for a warrant. There was a brief struggle. Mr. Griffin was secured in handcuffs and during a subsequent search of his person after being secured officers believed that they felt a firearm in his waistband. Mr. Griffin was asked if he had a firearm on his person. He responded affirmatively. We took possession of the firearm and Mr. Griffin was secured in a vehicle.

Q. Sergeant Homann, is it officer safety as part of an arrest to search a subject for weapons that may hurt an officer?

A. Yes, sir. Once someone is in custody, it's our responsibility to make sure that they are safe to everyone around them, including themselves, if we put them in a car by themselves until we leave the scene.

Q. Do you typically Mirandize an arrestee before conducting that officer safety search?

A. No, sir.

Q. Besides the statement that Mr. Griffin made that he did have a firearm on him, did he -- was he interviewed by law enforcement on that day?

A. He was not interviewed by us, no.

Q. Did he make any other statements during that arrest besides he did in
fact have a firearm on him?

A. No, sir, he did.

(Doc. 617, pp. 90-91).

On cross-examination, Homann provided additional information regarding the

struggle:

Q. Okay. So it's there. Did you see -- you talked about a struggle?

A. Yes, sir.

Q. Did you see that struggle?

A. Yes, sir.

Q. Describe when you say a struggle.

A. He was ordered to place his hands behind his back. He did not do so. He
pushed against the officers with his body weight and he attempted to pull
his hands to the front of his body. I gave him the command of tazer. I still
didn't gain compliance and he was subsequently tazed.

(Doc. 617, p. 107).

## II.    Discussion

Griffin contends the statement[3] regarding the location of the firearm was made

while under custodial interrogation and without being read the *Miranda* warnings. There

is no question that Griffin was in custody when questioned about whether he had a gun

on his person. *United States v. Murray*, 89 F.3d 459, 462 (7th Cir. 1996) (defendant was in

---

[3] Although, in his motion, Griffin contends that he made "statements" following his arrest but prior to
being mirandized, Homann's testimony indicates that Griffin was asked a single question and made a
single statement as to whether he had a firearm on his person. Griffin has not presented any evidence
contradicting this testimony.

custody once he was handcuffed and officers announced he was under arrest). Statements made under these circumstances must normally be suppressed if not the product of a knowing and voluntary waiver of a suspect's *Miranda* rights. However, in *New York v. Quarles,* 467 U.S. 649 (1984), the Supreme Court recognized a "public safety" exception to *Miranda*, which permits the admission of answers to questions posed in a limited custodial interrogation in the absence of *Miranda* warnings so long as the questions are "reasonably prompted by a concern for the public safety." 467 U.S. at 656. The question, therefore, is whether inquiring about whether Griffin had a firearm on his person, under the circumstances described above, falls within this "narrow" exception to *Miranda*.

The Court finds that it does. Under *Qurales*, considerations of safety to law enforcement officers and others nearby justify an officer's inquiry about the location of a gun without first advising a suspect of his *Miranda* rights. *Id.* at 651. *See also Anderson v. Thieret,* 903 F.2d 526, 531 (7th Cir. 1990). In this case, Griffin was under arrest following a brief struggle that required the use of a tazer. Homann testified credibly that officers believed they saw a gun on Griffin's person. Even though Griffin was handcuffed, it was necessary to determine whether he was armed prior to placing him into a police vehicle. Placing Griffin, alone, in a police vehicle with a weapon would have posed an immediate threat to officers and potentially the public. After securing the weapon, officers made no further inquiries, and Griffin did not make any additional statements. Under these circumstances, the Court finds that officers reasonably believed Griffin had a firearm on his person and inquired about the same to protect themselves and the public.

### III.     Conclusion

Considering the above, Griffin's Motion to Suppress his statement regarding the location of the firearm is **DENIED**.

**SO ORDERED.**

Dated: December 31, 2022

DAVID W. DUGAN
United States District Judge