IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21-CR-30003-DWD |
| | ) | |
| WARREN GRIFFIN, | ) | |
| | ) | |
| Defendant. | ) | |

## M<small>EMORANDUM AND</small> O<small>RDER</small>

Pending before the Court is Defendant Warren Griffin's ("Griffin") Motion to Sever. (Doc. 468). Griffin contends that the admission of out-of-court statements made by alleged co-conspirator Anthony Dobbins will substantially prejudice his rights and moves, pursuant to Federal Rule of Criminal Procedure 14, to sever his trial from that of his co-defendants. Additionally, Griffin argues for severance based on *Bruton v. United States*, 391 U.S. 123 (1968). The Government opposes the motion. (Doc. 542). The Court heard argument from the parties on November 15, 2022 and November 16, 2022.[1] The

---

[1] The Court held hearings on several pretrial motions the week of November 14, 2022. Oral argument as to the instant motion was heard on November 16, 2022. (Doc. 636). During that hearing, the parties agreed to provide the Court with an audio recording of Dobbins' interview with police following his arrest on August 18, 2022 (manually filed with the Court as Government's Exhibit No. 1). The statements that are the subject of the instant motion were made during that interview. The parties consented to admit the recording of the interview for the Court to review independently, and no witnesses were called. (Doc. 636, pp. 110-112). The Court further indicated that, after listening to the recording, it would request a transcript if necessary. After listening to the recorded interview, the Court finds that a transcript is not necessary. The Court also granted

Court has also reviewed the supplemental briefing filed by Griffin as to *Samia v. United States*, No. 22-00196. (Doc. 682).[2] For the reasons that follow, the motion is **DENIED**.

## I. BACKGROUND

On December 13, 2022, the grand jury returned a thirteen-count superseding indictment against Griffin, Dobbins, and three other alleged members of the Gangster Disciples street and prison gang. (Doc. 671).[3] The indictment charges the Defendants with conspiring to violate the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et. seq.*, through their alleged involvement with the Gangster Disciples. The indictment also charges the Defendants with numerous violent crimes and firearms offenses in connection with the racketeering conspiracy. Griffin and Dobbins are personally charged with RICO conspiracy (Count 1), murder in aid of racketeering

---

Dobbins' attorney's request for leave to file supplemental briefing if, after counsel reviewed the recording, he believed additional briefing was warranted. No such briefing has been filed. Finally, the Court heard testimony from one of the arresting officers, Sergeant Homann, during oral argument on a related motion on November 15, 2022. Dobbins' counsel was present for the hearing on November 15, 2022, and he was given an opportunity to cross-examine Sergeant Homann. (Doc. 617).

[2] Griffin asks the Court to note that the United States Supreme Court granted certiorari in *United States v. Hunter*, 2022 WL 1166623 (2d Cir. Apr. 20, 2022). *See Samia v. U.S.*, No. 22-1966, Dec. 13, 2022, 2022 WL 17586973. In *Hunter*, the Second Circuit held that a defendant's right of confrontation was not violated by the admission, through the testimony of a law enforcement officer, of a non-testifying co-defendant's confession, at their joint trial for conspiracy to commit murder-for-hire and related offenses, since the agent used neutral terms when referring to the defendant. The Second Circuit concluded that the redactions of the co-defendant's confession were sufficient to avoid a Sixth Amendment violation. In reaching this decision, the Second Circuit viewed the redacted confession in isolation. The defendant's petition for certiorari stated that the case involved a "mature and entrenched circuit conflict," regarding whether a redacted confession should be viewed in isolation or in context of the entire trial to determine if it implicates the defendant.

[3] The original indictment was returned on January 20, 2021. It included thirteen counts directed against Griffin, Dobbins, and five other alleged members of the Gangster Disciples street and prison gang (Doc. 1).

(Count 11), use of a firearm during and in relation to a crime of violence (Count 12), and use of a firearm during and in relation to a crime of violence causing death (Count 13).

As is relevant to the instant motion, the Superseding Indictment alleges that Dobbins and Griffin were leaders in the gang (each was allegedly a "Board Member") and murdered Ernest Wilson in Chicago, Illinois on May 18, 2018. The Government contends that Dobbins and Griffin worked together to kill Wilson. According to the Government, video surveillance from the day of the shooting shows two suspects involved in shooting Wilson. One of the suspects accidently shot himself during the assault on Wilson. The suspects then ran into a white SUV that was parked on a nearby street corner.

The Government indicates that circumstantial evidence will prove that the suspects in the surveillance video are Dobbins and Griffin. According to the Government, this evidence includes, but is not limited to: (1) photographs of Dobbins' vehicle running two tollbooths in a southern suburb of Chicago (near Griffin's residence), (2) Griffin's DNA found at the scene of Wilson's murder, (3) cell-site activity for phones associated with Dobbins and Griffin, and (4) Dobbins receiving treatment for a gunshot wound shortly after the murder.

On August 10, 2018, law enforcement arrested Dobbins outside of his apartment in Troy, Illinois. The Illinois State police interviewed him inside a police vehicle outside the residence. Dobbins waved his *Miranda* rights, signed a written *Miranda* waiver form, and agreed to speak with the officers. The following is a summary of statements made by Dobbins that are relevant to the instant motion:

1. Dobbins denied being in Chicago on May 18, 2018. He also indicated that his car was not in Chicago at that time, that no one else uses his vehicle, and that there is no reason his vehicle would have been in Chicago at that time.

2. Dobbins subsequently indicated that different people drive and/or borrow his vehicle. He also stated that if his car was in Chicago on May 18, 2018, it is because someone else was driving it. And that if his cell phone was in Chicago on May 18, 2018, it is because he left it in his vehicle.

3. Dobbins initially denied knowing an individual by the name of Ernest Wilson and asked if he had a nickname. After being told that Wilson's nickname was "Smokey," Dobbins stated that he did know Smokey. He further stated that he heard Smokey had been killed.

4. Dobbins indicated that, on May 18, 2018, he was shot by a stranger in East St. Louis.

5. Dobbins confirmed that Griffin is a close friend. He denied seeing Griffin on May 18, 2018 and stated that he did not know where Griffin was on May 18, 2018.

## II.    MOTION TO SEVER

Griffin moves, pursuant to Federal Rule of Criminal Procedure 14 and *Bruton v. U.S.*, 391 U.S. 123 (1968), to sever his case for trial. Griffin contends that Dobbins' out-of-court post-arrest statements to law enforcement are not admissible under the co-conspirator hearsay exception contained in Fed. R. Evid. 801(d)(2)(e) because they were not in furtherance of the conspiracy, warranting severance under Rule 14. Griffin also contends his Sixth Amendment confrontation right will be compromised by the introduction of Dobbins' statements to law enforcement, implicating *Bruton*.

The Government responds, arguing that severance is not warranted because (1) Dobbins' statements do not facially implicate Griffin, as such, *Bruton* is not applicable and (2) even if *Bruton* is implicated, less drastic measures, such as redaction and limiting instructions would satisfy *Bruton*.

### III.   LEGAL STANDARD

Griffin moves for severance pursuant to Federal Rule of Criminal Procedure 14, which provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14.

"There is a particularly strong preference for a single trial with co-defendants who have been jointly indicted." *United States v. Souffront,* 338 F.3d 809, 828 (7th Cir. 2003) (quoting *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1992)). In deciding a motion for severance, the court should balance the interests of the defendant in severance against the government's interest in judicial economy. *United States v. Rivera,* 825 F.2d 152, 159 (7th Cir. 1987). "The danger of prejudice to the least guilty, or perhaps prejudice to all from the sheer confusion of a multidefendant trial, is in all but the most unusual circumstances considered outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *Velasquez,* 772 F.2d at 1352.

When defendants have been properly joined under Rule 8(b), "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539. The Seventh Circuit has repeatedly explained that "limiting instructions * * * often will suffice to cure any risk of prejudice." *United States v. Warner, et al.,* 498 F.3d 666, 700–701 (7th

5

Cir.2007) (quoting *Zafiro,* 506 U.S. at 539–41). In reviewing a district judge's decision on severance, the Seventh Circuit has stated that "actual prejudice" does not exist just because "separate trials would have given a defendant a better opportunity for an acquittal." *United States v. Rollins,* 301 F.3d 511, 518 (7th Cir. 2002). Rather, the defendant must have been "deprived of his right to a fair trial." *Id.*

## IV.  DISCUSSION

Dobbins primary argument[4] relies on the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968). "In *Bruton*, the Supreme Court held that a defendant's Sixth Amendment right to confront witnesses against him is violated when the confession of a nontestifying codefendant, in which the defendant is *expressly implicated* as a participant in the crime, is admitted in the joint trial of the two defendants, even if the jury is instructed to consider the confession only against the confessing codefendant." *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) (emphasis supplied). *See also Richardson v. Marsh,* 481 U.S. 200, 201 (1987) ("*Bruton* held that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession *naming him as a participant in the crime* is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant.") (emphasis added).

---

[4] During the hearing on November 16, 2022, Griffin's counsel argued as follows: "What is important here – it's a *Bruton* issue, Judge – is whether any of the statements that were said by codefendant Dobbins implicate Warren Griffin or if it can come into evidence. Otherwise, …if it would be against our interest, those statements, we would be due severance." (Doc. 636, p. 111).

Here, on August 10, 2018, following his arrest, Dobbins gave a statement to law enforcement. The statement predominantly involved Dobbins' denying his involvement in Ernest Wilson's murder and denying that either he or his vehicle was in Chicago on May 18, 2018. The only portion of Dobbins' statement concerning Griffin consisted of Dobbins stating that Griffin is a good friend and that he does not know where Griffin was on May 18, 2018.

Griffin contends that his trial should be severed because Dobbins' post-arrest statement could prejudice him. Specifically, Griffin contends that the Government is expected to introduce evidence and argue that Dobbins was lying about "both his and Mr. Griffin's involvement and presence in Chicago and participation in the murder of Mr. [Wilson]."[5] (Doc. 468, p. 2). According to Griffin, this "anticipated assertion will be that as Mr. Dobbins is lying about his own involvement ergo has knowledge about and is also lying about Mr. Griffin's involvement." (Doc. 468, p. 2). But Dobbins' post arrest statement does not name Griffin as a participant in any crime. Rather, if credited by the trier of fact, the statement would tend to exculpate Griffin.

Moreover, Griffin contends that Dobbins' statement is only incriminating by inference – when linked to other evidence in the case. As clarified by the Supreme Court in *Richardson*, however, *Bruton* applies only to statements that are facially inculpatory. 481 U.S. at 207. Confessions that are only "incriminating by connection" to other evidence are not excluded under *Bruton*. *See id.* at 209. This is because "when a co-defendant's

---

[5] Throughout the briefing, counsel incorrectly refers to the victim, Ernest Wilson, as "Earnest Johnson."

statement is "not incriminating on its face, and bec[omes] so only when linked with evidence introduced later… it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence." 481 U.S. at 208. *See also Id.* ("Where the necessity of such linkage is involved, there does not exist the overwhelming probability of jurors' inability to disregard incriminating inferences that is the foundation of *Bruton*."). In summary, *Richardson* holds that an out-of-court statement of a defendant which incriminates another defendant only through its "linkage" to other evidence need not be redacted, if a limiting instruction is given to admonish the jury not to consider the statement as evidence against any defendant other than the declarant. *Richardson*, 481 U.S. at 207-208.

Considering the above, the Court finds that there is no *Bruton* issue with respect to Dobbins' post-arrest statement. And, to the extent that Dobbins' post-arrest statement incriminates Griffin through its "linkage" to other evidence, a limiting instruction – not severance – is the appropriate solution.

Griffin also contends that Dobbins' post-arrest statement, when linked to other evidence in the case, constitutes "an implicit hearsay statement implicating Mr. Griffin in Mr. [Wilson's] murder and presence with Mr. Dobbins in Chicago. Griffin further contends that, because Dobbins' post-arrest statement was not in furtherance of the alleged conspiracy, it is not admissible under the co-conspirator exception to the hearsay rule. *See* Fed. R. Evid. 801(d)(2)(E).[6] Griffin's argument is not well taken. Rule 801(c)

---

[6] Rule 801(d)(2)(E) requires that the statements the Government seeks to introduce must have been made "in furtherance of" the conspiracy in order to be admissible. The Supreme Court has stated that "a vital

defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*" Fed. R. Evid. 801(c) (emphasis added). The Court fails to see how any of Dobbins' post-arrest statements meet this definition. For instance, the Government has no interest in proving that Dobbins and Griffin were *not* in Chicago on May 18, 2018 and were *not* involved in Ernest Wilson's murder. Thus, Dobbins' statements, denying involvement in Ernest Wilson's murder, denying that his vehicle was in Chicago on May 18, 2018, and denying that Dobbins was with Griffin on May 18, 2018 would not be offered to prove their truth. As a result, the testimony would be admissible without regard to satisfying the requirements of Rule 801(d)(2)(E).

Further, even if the Court were to accept Griffin's contention that Dobbins' post-arrest statements somehow constitute "implicit hearsay", as Griffin describes it, an appropriate limiting instruction is the proper remedy. While some hearsay statements are so "powerfully incriminating" that juries cannot be expected to ignore them, *Bruton v. United States,* 391 U.S. 123, 135 (1968), that is simply not the case with the statements at issue here. As previously discussed, Dobbins' statements are not inculpatory of Griffin. At most, Dobbins' statements may incriminate Griffin when linked to other evidence in the case. As such, there is no reason to conclude that a limiting instruction, admonishing

---

distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Grunewald v. United States,* 353 U.S. 391, 405 (1957).

the jury not to consider Dobbins' post-arrest statements as evidence against any other defendant, would be insufficient.

V. CONCLUSION

For the reasons stated herein, Defendant Warren Griffin's Motion to Sever. (Doc. 468) is **DENIED**.

**SO ORDERED.**

Dated: January 6, 2023

                                      DAVID W. DUGAN
                                      United States District Judge